**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| **THOMAS JAMES MAHONE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **VS.** | : | |
| | : | **NO. 4:17-CV-113-MSH** |
| **THE MEDICAL CENTER, INC.,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

_____

## ORDER

Presently pending before the Court is a Complaint filed by *pro se* Plaintiff Thomas James Mahone raising claims pursuant to 42 U.S.C. § 1983 and the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Plaintiff has also moved for leave to proceed *in forma* pauperis, to serve the Complaint and summons, and to recuse the undersigned. For the following reasons, the undersigned **GRANTS** Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) and **DENIES** Plaintiff's motion to recuse (ECF No. 7). The undersigned further finds that Plaintiff's EMTALA claims against The Medical Center Inc., d/b/a Midtown Medical Center ("MMC") must proceed for further factual development but that Plaintiff's § 1983 claims must be **DISMISSED** and his state law claims against Defendants Kaiser, Foster, Nichols, Clark, Hattaway, Sparks, Harris, and Demaro must be **DISMISSED without prejudice**. Plaintiff's motion to serve the Complaint and summons (ECF No. 6) is **DENIED as moot**.

## I.    Motion to Proceed *in forma pauperis*

Section 1915 allows the district courts to authorize the commencement of a civil action without prepayment of the normally-required fees upon a showing that the plaintiff is indigent and financially unable to pay the filing fee.  A prisoner seeking to proceed *in forma pauperis* ("IFP") under this section must provide the district court with both (1) an affidavit in support of his claim of indigence and (2) a certified copy of his prison "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." § 1915(b).

In this case, Plaintiff's pauper's affidavit and trust account statement show that he is currently unable to prepay the Court's filing fee.  Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is thus **GRANTED** and Plaintiff will be assessed an initial partial filing fee of $0.00.  Plaintiff, however, is still obligated to pay the full balance of the filing fee, in installments, as set forth in § 1915(b) and explained below.  It is accordingly requested that the **CLERK** forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.  The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if the Plaintiff's Complaint (or any part thereof) is dismissed prior to service.

### A. Directions to Plaintiff's Custodian

It is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the Clerk of this Court twenty percent

(20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is further **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

B. Plaintiff's Obligations Upon Release

Pursuant to provisions of the PLRA, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the PLRA. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

II.     **Motion to Recuse**

Plaintiff has filed a motion for recusal in which he alleges that the undersigned should be recused from this case because the undersigned "was highly partial toward the

defendants in dismissing" his previous very similar lawsuit and because of the perceived delays in issuing rulings in Plaintiff's cases.  Mot. Recuse 1-2, ECF No. 7.

28 U.S.C. § 455 provides the standard for when a judge, justice, or magistrate judge must disqualify himself from a particular proceeding.[1]  The statute generally provides that a magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The statute also enumerates certain other circumstances requiring a judge to disqualify himself.  *Id.* at § 455(b)(1)-(5).  Plaintiff does not specify which statutory circumstances apply to this case. It appears, however, that Plaintiff's primary complaint is that the undersigned is biased towards Defendants in this action.  Plaintiff may thus be relying on either subsection (a) or subsection (b)(1).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality."  *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted).  In the Eleventh Circuit, "it is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in

---

[1] 28 U.S.C. § 144 also governs recusal, but it requires the moving party to file an affidavit stating that the judge has a personal bias or prejudice against the plaintiff or defendant, and the affidavit must provide facts and reasons for the belief that bias or prejudice exists. Plaintiff has not filed such an affidavit, and this requirement is strictly enforced.  *See, e.g., United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (finding that the court did not abuse its discretion by denying litigant's pro se motion for recusal under 28 U.S.C. § 144 because the affidavit did not meet the statute's procedural requirements). As such, the undersigned will assume that Plaintiff intended to proceed under § 455.

nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks and citation omitted) (per curiam). As a result, "a judge's rulings in the same or a related case are not a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case."). In this case, Plaintiff has not alleged that any extrajudicial, personal bias pervaded the undersigned's rulings in Plaintiff's previous case, nor has Plaintiff alleged that the undersigned would not fairly and impartially consider all Plaintiff's future contentions and decide the issues accordingly.

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)). Again, Plaintiff has failed to allege any personal bias on the part of the undersigned, and Plaintiff also fails to identify any specific "disputed evidentiary facts" of which the undersigned has knowledge. Any knowledge gained through the course of a judicial proceeding is not a "disputed evidentiary fact" that requires recusal. *United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999). Instead, knowledge of disputed evidentiary facts must be gained through an

extrajudicial source to warrant recusal. No such knowledge exists here. Because Plaintiff has failed to allege facts requiring the undersigned to recuse himself, his motion for recusal must be **DENIED**.

In his motion for recusal, Plaintiff also asserts that he is unilaterally withdrawing his consent to permit the undersigned "to decide any matter in the instant case dispositive or non-dispositive." Mot. Recusal 2, ECF No. 7. 28 U.S.C. § 636(c)(1) provides that:

> Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

Both parties in this case signed a consent form pursuant to this statute electing to permit a United States magistrate judge "to conduct any or all proceedings in this case." Notice 1-2, June 23, 2017, ECF No. 5.

Contrary to Plaintiff's assertion, "there is no absolute right to withdraw a validly given consent to trial before a magistrate." *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (holding that once a party knowingly and voluntarily waives his constitutional right to have an Article III judge conduct trial and enter judgment, he "has no constitutional right to recant at will"). The district court may, however, "for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection." 28 U.S.C. § 636(c)(4); *see also* Fed. R. Civ. P. 73(b)(3) ("On its own for good cause—or when a party shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge under this rule."). If Plaintiff wishes to avail

himself of this procedure, he must file a separate motion to vacate the reference of this case to the undersigned and fully explain the "extraordinary circumstances" that justify such relief. Plaintiff is advised, however, that "[d]issatisfaction with a magistrate judge's decision does not constitute 'extraordinary circumstances.'" *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 172 (5th Cir. 2011).

### III. Preliminary Screening

A. <u>Standard of Review</u>

In accordance with the Prison Litigation Reform Act ("PLRA"), the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The

Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

B. <u>Factual Allegations</u>

According to Plaintiff's Complaint in this case, on November 12, 2013, at approximately 12:44 a.m., Plaintiff "presented himself" to the emergency room at MMC.

Compl. 7, ECF No. 1. Plaintiff "requested an appropriate medical screening examination and treatment for his suicidal ideations, depression, post traumatic stress disorder (PTSD) and hallucinations." *Id.* At approximately 1:06 a.m., Plaintiff was triaged by Defendant Harris, a registered nurse. Defendants Harris registered Plaintiff "as a category two (2) patient, and dressed him out in hospital gowns and obtained an initial urine sample." *Id.* at 10. At approximately 1:25 a.m., Defendant Harris "did not accept Plaintiff's initial urine sample and so at that point Plaintiff request[ed] to be discharged." *Id.* Instead of discharging Plaintiff, Defendant Harris and Defendant Demaro (an emergency room physician) "ordered MMC security guards to detain Plaintiff against his will and subjected him to false imprisonment and battery." *Id.* at 11.

Plaintiff was placed on "suicidal observation precautions" at approximately 1:45 a.m., and nurses Defendants Clarks, Hattaway, and Sparks observed him at this time. *Id.* at 13. At some point, Plaintiff also contends that Defendant Demaro "ordered Plaintiff to be 'chemically restrained' with the psychotropic drugs Haldol and Activan [sic]" in violation of MMC policy. *Id.* at 12.[2] At approximately 3:45 a.m., Plaintiff alleges he "was pressured and threatened" by Defendants Harris and Foster, an MMC security guard, "to provide a second urine sample by means of a catheter." *Id.* at 14. Plaintiff attempted to decline the procedure, stating that it would be "too painful," and "renewed

---

[2]The documents attached to Plaintiff's Complaint state that at 1:06 a.m., a medical professional (likely Defendant Harris) "attempted" to medicate Plaintiff with Haldol and Ativan, but Plaintiff stated he was allergic to both medications and a doctor was notified. Attach. 1 to Compl. at 10, ECF No. 1-1. It is therefore unclear whether Plaintiff was actually "chemically restrained." Documents attached to pleadings are considered part of the pleading under Federal Rule of Civil Procedure 10(c).

his request to be discharged." *Id.* Despite this request, at approximately 4:15 a.m., Defendants Demaro and Harris ordered hospital security guards Defendants Nichols, Foster, and Kaiser, four other security guards, and Defendants Sparks, Clark, and Hattaway "to restrain Plaintiff in order to obtain a second urine sample from him." *Id.* Plaintiff alleges that Defendant Harris "maliciously and forcefully inserted a catheter into Plaintiff's penis and extracted a urine sample while he was being restrained" and that he "urinated blood" and "was sore for three days after the catheter." *Id.* Plaintiff also contends that Defendant Nichols "choked Plaintiff and used pressure points" and that Defendant Foster "twisted Plaintiff's left arm causing extreme pain" while they were attempting to restrain Plaintiff during the catheterization. *Id.*

While Plaintiff was being restrained, he admittedly threatened to "kick [Defendant Nichols'] ass for choking [Plaintiff] and for using pressure points to get him to submit to the catheter." *Id.* at 15. As a result of these threats, "Defendant Nichols had Plaintiff arrested on criminal charges, terroristic threats and disorderly conduct" at approximately 4:23 a.m., eight minutes after the forced catheterization procedure. *Id.* At 4:29 a.m., Defendant Demaro "medically cleared Plaintiff to be transferred to Muscogee County Jail, without admitting him as an inpatient" and "without providing [Plaintiff] with a psychiatric evaluation or treatment." *Id.*

Plaintiff contends that his "emergency medical condition deteriorated when he was transferred to the county jail": he "became emotionally traumatized and experienced prolonged suicidal ideations for six (6) months, suffered serious cognitive impairment and incontinence, has been under mental health care for the past three years, and he has

developed a distrust for medical practicioners [sic] touching or examining him[.]" *Id.* Plaintiff also contends that he has suffered "lapse in memory" and his "chronic rage flares up" as a result of Defendants' conduct. *Id.*

Plaintiff brings claims under 42 U.S.C. § 1983 against each of the Defendants, alleging they have violated various constitutional rights. *See* Counts 2, 3, 4, 7, Compl. 16-18, 20, ECF No. 1. Plaintiff also contends Defendants Demaro, Harris, and MMC should be liable under EMTALA. *See* Count 1, Compl. 16, ECF No. 1. Plaintiff also appears to bring state law claims for battery, fraud, false imprisonment, and intentional infliction of emotional distress. *See* Claims 5, 6, 8, Compl. 19-21, ECF No. 1. Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and other fees, penalties, and fines as a result of these alleged violations. Compl. 21-22, ECF No. 1.

### C. Procedural History

Plaintiff's claims are familiar to the Court—he raised them in an action based on precisely the same November 12, 2013 course of events giving rise to his claims in the above-captioned action. *See Mahone v. Midtown Medical Center*, No. 4:15-cv-00180-CDL-MSH (Nov. 9, 2015) ("*Mahone I*"). In *Mahone I*, Plaintiff also raised § 1983 and EMTALA claims against many of the same Defendants in this case, including Defendants MMC, Nichols, Foster, and Kaiser. Plaintiff also attempted to raise these federal claims against numerous John and Jane Doe security guards and nurses, including Defendants Demaro and Harris. *See* Order 10, ECF No. 59 in *Mahone I* (denying motion to amend to add parties). In addition, Plaintiff alleged state law claims against Defendants Nichols, Foster, Kaiser, MMC, and numerous Doe Defendants for battery,

false imprisonment, and intentional infliction of emotional distress. *See* Suppl. Compl. 13-16, ECF No. 16 in *Mahone I*.

Following an initial screening of Plaintiff's claims in *Mahone I*, Plaintiff's individual capacity § 1983 claims against Defendants Nichols, Foster, and Kaiser, and his state law claims against MMC, were permitted to proceed for further factual development. *See* Recommendation 16, May 20, 2016, ECF No. 18 in *Mahone I*. The Court dismissed Plaintiff's remaining claims without prejudice over Plaintiff's objections. Order Adopting Recommendation, June 22, 2016, ECF No. 25 *in Mahone I*.

On October 7, 2016, the remaining Defendants filed a motion for summary judgment. Over the next several months, the parties engaged in partial discovery and Plaintiff's time for responding to Defendants' motion was stayed while several discovery motions were resolved. In the interim, Plaintiff filed two motions seeking leave to amend and one amended complaint. On May 22, 2017, Plaintiff also filed the Complaint in the above-captioned action.

On June 8, 2017, Plaintiff was ordered to file a response to Defendants' motion for summary judgment. Plaintiff responded with his own motion for summary judgment in which he also requested that the Court consolidate this case with *Mahone I*. *See* Attach. 1 to Pl.'s Mot. Summ. J., ECF No. 53-1 in *Mahone I*. On August 24, 2017, the undersigned recommended that Plaintiff's claims against Defendants Nichols, Foster, and Kaiser—the only remaining individual Defendants in *Mahone I* after preliminary screening—be dismissed on grounds that they were not state actors and Plaintiff therefore could not maintain his § 1983 claims against them. The undersigned further recommended that the

Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and denied Plaintiff's motions to amend and his motion to consolidate. *See* Recommendation 9-12, ECF No. 59 in *Mahone I.*

### D. Plaintiff's Claims

Because the Court denied Plaintiff's motion to consolidate the above-captioned action into *Mahone I*, the Complaint in this case is now ripe for screening under 28 U.S.C. § 1915A and 1915(e). Having conducted such screening, the undersigned finds that although Plaintiff's § 1983 claims are barred by federal preclusion principles, Plaintiff's EMTALA claims against MMC cannot be summarily dismissed.

### 1. Section 1983 Claims

Plaintiff alleges that all Defendants violated his constitutional rights and that they should be held liable for these violations under 42 U.S.C. § 1983. These claims are barred by federal preclusion principles. *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003) (federal preclusion principles apply in cases where a federal question was previously decided by a federal court). "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* The doctrine of issue preclusion, or collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the

issue recurs in the context of a different claim." *Id.* Each of these doctrines applies in this case.

### a. Claim Preclusion

First, claim preclusion principles plainly bar Plaintiff's § 1983 claims against Defendants Nichols, Kaiser, and Foster in this case. Claim preclusion bars the subsequent filing of claims that were raised (or could have been raised) in an earlier proceeding. *See, e.g., Sealy v. Branch Banking & Trust Co.*, 693 F. App'x 830, 833 (11th Cir. 2017) (per curiam). The doctrine bars the subsequent claims when the following four elements are present: "(1) a final judgment on the merits was entered; (2) the prior decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.*

As to Plaintiff's § 1983 claims against Defendants Nichols, Kaiser, and Foster, the judgment in *Mahone I* was a final judgment on the merits entered by a court of competent jurisdiction, and the parties are identical in both suits. *See, e.g., Sealy*, 693 F App'x at 834 ("In light of [plaintiff's] federal-law claims, the court had federal question jurisdiction."); *Humphrey v. U.S. Dep't Homeland Sec.*, 681 F App'x 797, 798 (11th Cir. 2017) (per curiam) (district court's grant of summary judgment in favor of defendant on all of plaintiff's claims "resulted in a final judgment on the merits" for *res judicata* purposes). Because the cases both arose out of the "same nucleus of operative fact," the same cause of action is also involved in both cases. *See Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) ("[T]wo cases are generally considered to involve

the same cause of action if the latter case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former one." (internal quotation marks omitted)). Although the legal theories raised in the current case appear to be virtually identical to the legal theories in *Mahone I*, even if they were not, "claim preclusion bars not only those claims that were actually litigated in the prior suit, but any and all legal theories and claims that could have been brought out of the same nucleus of operative fact." *Sealey*, 693 F. App'x at 833-34 (citing *Maldonado*, 664 F.3d at 1376). Plaintiff's § 1983 claims against Defendants Nichols, Foster, and Kaiser are therefore barred by claim preclusion, and they must be **DISMISSED**.

### b. Issue Preclusion

The doctrine of issue preclusion, or collateral estoppel, bars Plaintiff's remaining § 1983 claims in this case. This doctrine "forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc.*, 327 F.3d at 1317 (internal quotation marks omitted). In the Eleventh Circuit, the prerequisites to the application of collateral estoppel are:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id*. The doctrine "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial

economy by preventing needless litigation." *Id.* (internal quotation marks and citation omitted).

An application of the doctrine of collateral estoppel negates an essential element of Plaintiff's § 1983 claims against the remaining Defendants in this case. In order to state a viable § 1983 claim, Plaintiff must allege that the deprivation of his rights was caused by a person who was acting under color of state law. *Hale*, 50 F.3d at 1582. In this case, Plaintiff states that each Defendant "was working under color of state law at a public hospital whose premises is owned by the Medical Center Hospital Authority a state agency." Compl. 6, ECF No. 1. Plaintiff thus proceeds on the theory that MMC is a state actor by virtue of its relationship with the Medical Center Hospital Authority ("MCHA"), and the individual Defendants are state actors by virtue of their employment with MMC. *See id.*

The relationship between MCHA and MMC was central to the resolution of Plaintiff's claims in *Mahone I*. In the summary judgment briefing in *Mahone I*, Plaintiff argued that MMC was a state actor because MMC was intertwined with the MCHA. See Pl.'s Reply to Defs.' Mot. Summ. J. 2, ECF No. 57 in *Mahone I* (stating that "MMC has so far insinuated itself into a position of interdependence with Hospital Authority for the past 28 years or more that the action of MMC cannot be considered private"); *see also* Recommendation 7, ECF No. 59 in *Mahone I*. The Court consequently analyzed the relationship between MMC and MCHA and determined there was an insufficient nexus between the two entities to constitute state action. *Id.* at 9. Because MMC was not a state actor, the Court found that Defendants Kaiser, Nichols, and Foster could not be

considered to be state actors "solely by virtue of their employment with MMC." *Id.* The Court therefore concluded that Plaintiff had failed to establish that Defendants Kaiser, Nichols, and Foster acted "under color" of state law, as required for § 1983 liability and granted those Defendants' motion for summary judgment on that basis. *See id.*

Based on the Court's reasoning in *Mahone I*, Plaintiff is collaterally estopped from asserting in this case that MMC is a state actor based solely on its relationship with MCHA. This identical issue was resolved against Plaintiff in *Mahone I*, and it was fully and fairly litigated and critical to the judgment entered therein. *CSX Transp.*, 327 F.3d at 1317; *see also Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999) (affirming dismissal of § 1983 claims against hospital where prior federal case arising from same facts held that hospital did not act under color of law); *Porter v. Cancelmi*, 318 F. App'x 48, 50 n.3 (3d Cir. 2008) (collateral estoppel applied to prevent plaintiff from "relitigating the issue of whether [defendant] acted under color of state law because [plaintiff] actually litigated and lost that same issue in his first suit, which was finally decided against him on that basis"); *Miller v. Indiana Hosp.*, 562 F. Supp. 1259, 1279 (W.D. Pa. 1983) (applying collateral estoppel as to the issue of whether hospital's activities constituted state action).

Plaintiff's inability to relitigate whether MMC is a state actor because of its relationship with MCHA is also fatal to his claims against the remaining individual Defendants in this case. Again, the only basis Plaintiff has provided in this case for his contention that any Defendants are "state actors" is his allegation that they worked for MMC, and MMC was owned by MCHA. Compl. 6, ECF No. 1. Because Plaintiff is

estopped from alleging that MMC is a state actor because of its relationship with MCHA, Plaintiff also cannot claim that MMC employees are state actors just because they work for MMC. *See* Recommendation 10, ECF No. 59 in *Mahone I* (finding that Plaintiff's motion to amend to add Defendants Demaro, Harris, and various administrative nurses would be futile because "Plaintiff cannot maintain actions pursuant to § 1983 against MMC or its employees").

Absent the relationship between MMC and MCHA, Plaintiff has alleged no other facts to support his assertion that any Defendants acted under color of state law in this case. He has therefore failed to state a § 1983 claim upon which relief may be granted as to Defendants MMC, Clark, Hattaway, Sparks, Harris, and Demaro, and his § 1983 claims against these Defendants must be **DISMISSED.**

## 2. *EMTALA Claims*

As in *Mahone I*, Plaintiff in this case also contends that MMC and several of the individual Defendants are liable under the EMTALA. Plaintiff's EMTALA claims were dismissed without prejudice prior to service pursuant to 28 U.S.C. § 1915A in *Mahone I*, and thus *res judicata* principles do not apply to these claims.

EMTALA imposes two primary duties on covered hospitals. First, the statute requires covered hospitals to "screen for an emergency medical condition any individual who is admitted to its emergency room seeking treatment." *Johnson v. Health Cent. Hosp.*, 208 F. App'x 797, 801 (11th Cir. 2006) (per curiam). Second, "[i]f such a condition exists, the hospital must then provide stabilizing treatment before discharging or transferring the patient." *Id.* "An EMTALA violation thus arises when a hospital

either (1) fails to adequately screen a patient, or (2) discharges or transfers the patient without first stabilizing his emergency medical condition." *Id.* A covered hospital may, however, satisfy "its obligations under the statute if the patient refuses to consent to treatment." *Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d 710, 713 (10th Cir. 1990) (per curiam) (citing 42 U.S.C. § 1395dd(b)(2)). EMTALA has a fairly limited scope in that it "was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence." *Harry v. Marchant*, 291 F.3d 767, 773 (11th Cir. 2002) (en banc).

Plaintiff appears to allege both a "screening" claim and a "stabilization" claim under EMTALA. Compl. 9, ECF No. 1. As a preliminary matter, Plaintiff contends that various individual Defendants violated EMTALA, but recovery under the statute is "limited to actions against participating hospitals." *Deron v. Wilkins*, 879 F. Supp. 603, 606 (S.D. Miss. 1995) (collecting cases). Thus, Plaintiff's only potential EMTALA claim would be against MMC itself, and thus any EMTALA claims against the individual Defendants must be **DISMISSED.**

With respect to Plaintiff's screening claim, EMTALA "requires a hospital to develop a screening procedure designed to identify such critical conditions that exist in symptomatic patients and to apply that screening procedure uniformly to all patients with similar complaints." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879 (4th Cir. 1992). "The key requirement is that a hospital 'apply its standard of screening *uniformly* to all emergency room patients, regardless of whether they are insured or can pay.'" *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994) (*quoting Brooks v. Maryland*

*Gen. Hosp., Inc.*, 996 F.2d 708, 710-11 (4th Cir. 1993)). Plaintiff alleges that he "was not provided with the same psychiatric evaluation or treatment provided to other patients," and he cites to specific hospital policies in support of this contention. Compl. 10, ECF No. 1; *see also id.* at 13 (stating that "MMC Policy Hosd.Ps.0110 Section 8" provides that patients placed on suicide precautions "should be observed for 23 hours," but Plaintiff "was observed for only 3 hours at max). Construing his allegations liberally, Plaintiff's EMTALA screening claim is therefore not necessarily frivolous. *See Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) (holding that EMTALA's screening provision "requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient"); *see also Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 272 (6th Cir. 1990) ("A hospital that provides a substandard (by its standards) or nonexistent medical screening for any reason (including, without limitation, race, sex, politics, occupation, education, personal prejudice, drunkenness, spite, etc.) may be liable under [EMTALA]."); *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137-38 (8th Cir. 1996) (en banc) (plaintiff not required to "prove some sort of improper motive in order to recover under EMTALA").

With respect to Plaintiff's EMTALA stabilization claim, Plaintiff must present evidence that he had an emergency medical condition about which the hospital was aware; that he was not stabilized before transfer; and that "the hospital neither obtained the patient's consent to transfer nor completed a certificate indicating the transfer would be beneficial to the patient and was appropriate. *Holcomb*, 30 F.3d at 117. Plaintiff states that his "suicidal ideations, depression, PTSD, and hallucinations" constituted an

"emergency condition" from which he suffered at the hospital. Compl. 16, ECF No. 1. He further alleges that this condition "deteriorated when he was transferred to the county jail," and he provides specific examples of that deterioration. *Id.* at 15. It also appears Plaintiff did not consent to be transferred to the jail, and it is unclear whether the hospital completed a certificate regarding the transfer.[3] For purposes of preliminary screening, the undersigned also cannot conclude that Plaintiff's EMTALA stabilization claims are necessarily frivolous. *See, e.g., Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 769 (2005) (holding that jury questions existed on EMTALA claims where plaintiff alleged hospital transferred her to jail without proper stabilization while she was intoxicated and suicidal).

It should be noted, however, that Plaintiff did appear to refuse (or attempt to refuse) at least some of the screening and stabilization measures offered to him at MMC, and he may be "estopped from later seeking relief based on the defendant's failure to perform the very act the plaintiff had prevented." *Cavender v. Sutter Lakeside Hosp., Inc.*, No. C-04-3110 MMC, 2005 WL 2171714, at *4 (N.D. Cal. Sept. 6, 2005). But it is presently unclear, however, whether MMC met all of its obligations under the statute. *See, e.g., Stevison*, 920 F.2d at 713-14 (where a request for treatment is made, burden is on defendant to show that request was later withdrawn); *see also Henderson v. Med. Center Enterprise*, No. 1:05-cv-823-MEF, 2006 WL 2355467, at *5 (M.D. Ala. Aug. 14,

---

[3] Under the EMTALA, a "transfer" is defined as "the movement (including the discharge) of an individual outside a hospital's facilities at the director of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital[.]" 42 U.S.C. § 1395dd(e)(4).

2006) (finding that questions of fact existed regarding whether hospital "offer[ed] the individual further examination and/or treatment," "inform[ed] the individual of the risks and benefits of such examination/treatment," and took "'all reasonable steps' to secure [the plaintiff's] written informed consent to refuse examination/treatment" as required by EMTALA when patient refuses to consent to treatment). Plaintiff's EMTALA claims must therefore proceed for further factual development.

E. State Law Claims

In addition to his § 1983 and EMTALA claims, Plaintiff asserts various state law claims against Defendants. Compl. 20-21, ECF No. 1. As a rule, a district court will decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3).

In this case, the undersigned has dismissed of all the federal claims against the individually-named Defendants in this case (i.e., all Defendants except MMC). The undersigned therefore declines to exercise supplemental jurisdiction over any state law claims Plaintiff may be attempting to bring against the individually-named Defendants and any such claims shall be **DISMISSED without prejudice**. *See Kimbell v. Clayton Cnty.*, Civil Action No. 1:03-CV-2910-JEC, 2005 WL 7861525, at *17 (N.D. Ga. Sept. 27, 2005) (declining to exercise supplemental jurisdiction over state law claims against only those defendants whose motions for summary judgment were granted), *aff'd* 170 F. App'x 663 (11th Cir. 2006) (per curiam).

Although the undersigned has determined that Plaintiff's EMTALA claims against MMC should survive initial screening, it has not done so without reservations, and it is

possible that such claims may fail if faced with a motion to dismiss or motion for summary judgment. In the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Therefore, as federal jurisdiction over Plaintiff's state law claims against MMC remains an unsettled issue, the Court finds it unnecessary and inappropriate to fully address the merits of such claims at this early stage of the case.

## IV. Conclusion

Based on the foregoing, the undersigned **GRANTS** Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2), **DENIES** Plaintiff's motion to recuse (ECF No. 7), and concludes that Plaintiff's EMTALA claims against MMC must proceed for further factual development. The undersigned further finds, however, that Plaintiff's § 1983 claims against all Defendants must be **DISMISSED,** and his state law claims against Defendants Kaiser, Foster, Nichols, Clark, Hattaway, Sparks, Harris, and Demaro must be **DISMISSED without prejudice**. Because service of the Plaintiff's Complaint on Defendants is addressed in this Order, Plaintiff's Motion for Service (ECF No. 6) is **DENIED as moot.**

## ORDER FOR SERVICE

Having found that Plaintiff's allegations against MMC require further factual development, it is accordingly **ORDERED** that service be made on Defendant MMC and that it file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendant is reminded of the duty

to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendant is similarly advised that it is expected to diligently defend all allegations made against it and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each

opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of

Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

SO ORDERED, this 22nd day of December, 2017.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE