IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THOMAS JAMES MAHONE, :
:
    Plaintiff, :
:
v. : Case No. 4:17-CV-113-MSH
:
THE MEDICAL CENTER, INC., :
:
    Defendant. :
_____

## ORDER

Presently pending before the Court is Defendant's motion to dismiss Plaintiff's complaint (ECF No. 18) and Plaintiff's motions seeking leave to amend (ECF No. 21), recusal (ECF No. 26), a hearing (ECF No. 30), and court compelled action (ECF No. 31). For the reasons explained below, Defendant's motion to dismiss and Plaintiff's motion to amend are granted. Plaintiff's renewed motion for recusal is denied and his motions for a hearing and court compelled action are denied as moot.

## BACKGROUND

**I. Factual Allegations**

According to Plaintiff's original complaint (ECF No. 1), on November 12, 2013, at approximately 12:44 a.m., Plaintiff "presented himself" to the emergency room at Midtown Medical Center ("MMC"). Compl. 7, ECF No. 1. There, he "requested an appropriate medical screening examination and treatment for his suicidal ideations, depression, post traumatic stress disorder (PTSD) and hallucinations." *Id.* Plaintiff was triaged by Jamila

Harris, a registered nurse, at roughly 1:06 a.m. *Id.* at 10. Harris conducted a physical assessment of Plaintiff and classified him "as a category two (2) patient, and dressed him out in hospital gowns and obtained an initial urine sample." *Id.* Harris "did not accept [P]laintiff's initial urine sample and so at [approximately 1:25 a.m.] [P]laintiff request[ed] to be discharged." *Id.* However, instead of discharging Plaintiff, Harris and Dr. Thomas Demaro, an emergency room physician, "ordered MMC security guards to detain [P]laintiff against his will and subjected him to false imprisonment and battery." *Id.*

Plaintiff was "placed on suicidal observation precautions" at approximately 1:45 a.m., and observed by nurses. Compl. 13. Plaintiff also contends that Dr. Demaro "ordered Plaintiff to be chemically restrained with the psychotropic drugs Haldol and Activan [sic]" in violation of MMC policy. *Id.* at 12.[1] Plaintiff alleges he "was pressured and threatened[,]" by Nurse Harris and an MMC security guard, "to provide a second urine sample by means of a catheter" at approximately 3:45 a.m. *Id.* at 14. Plaintiff attempted to decline the procedure by stating it would be "too painful" and "renewed his request to be discharged." *Id.* Despite this request, at approximately 4:15 a.m., Dr. Demaro and Nurse Harris ordered hospital security guards "to restrain [P]laintiff in order to obtain a second urine sample from him." *Id.* Nurse Harris allegedly "maliciously and forcefully inserted a catheter into [P]laintiff's penis and extracted a urine sample while he was being

---

[1] The documents attached to Plaintiff's Complaint indicate that at 1:06 a.m., a medical professional "attempted" to medicate Plaintiff with Haldol and Ativan, but Plaintiff stated he was allergic to both medications and a doctor was notified. Attach. 1 to Compl. at 10, ECF No. 1-1. It is therefore unclear whether Plaintiff was actually "chemically restrained." Documents attached to pleadings are considered part of the pleading under Federal Rule of Civil Procedure 10(c).

restrained" and Plaintiff "urinated blood" and "was sore for three days after the catheter." *Id.* Plaintiff also contends a security guard choked him "and used pressure points techniques" to get him to submit to the catheter and that another guard twisted his left arm "causing extreme pain" while attempting to restrain Plaintiff during the catheterization. *Id.*

Plaintiff admits that, while he was being restrained, he threatened to "kick [a MMC guard's] ass for choking [Plaintiff] and for using pressure points to get him to submit to the catheter." Compl. 15. As a result of these threats, Plaintiff was "arrested on criminal charges, terroristic threats and disorderly conduct" at approximately 4:23 a.m.—eight minutes after the forced catheterization procedure. *Id.* At 4:29 a.m., Dr. Demaro "medically cleared Plaintiff to be transferred to Muscogee County Jail, without admitting him as an inpatient" and "without providing [Plaintiff] with a psychiatric evaluation or treatment." *Id.* Plaintiff contends that his "emergency medical condition deteriorated when he was transferred to the county jail" and that he "became emotionally traumatized and experienced prolonged suicidal ideations for six (6) months, suffered serious cognitive impairment and incontinence, has been under mental health care for the past three years, and he has developed a distrust for medical practicioners [sic] touching or examining him[.]" *Id.* Plaintiff also contends that he has suffered "lapse in memory" and his "chronic rage flares up" as a result of Defendants' conduct. *Id.*

In his original complaint, Plaintiff raises claims under 42 U.S.C. § 1983 against numerous Defendants, alleging they have violated various constitutional rights. *See* Compl. 16-18, 20. He also argues that MMC and multiple other Defendants should be liable under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42

U.S.C. § 1395dd,. *See* Compl. 16. Plaintiff also appears to raise state law claims for battery, fraud, false imprisonment, and intentional infliction of emotional distress. *See* Compl. 19-21. Finally, he seeks a declaratory judgment, compensatory and punitive damages, and other fees, penalties, and fines as relief for these alleged violations. Compl. 21-22.

## II. Procedural History

### A. Prior Suit

Plaintiff's claims are familiar to the Court because he raised them in a previous action based on the same alleged November 12, 2013, events. *See Mahone v. Midtown Medical Center*, No. 4:15-cv-00180-CDL-MSH (M.D. Ga. Nov. 9, 2015) ("*Mahone I*"). In *Mahone I*, Plaintiff also raised § 1983 and EMTALA claims against many of the same Defendants he initially brought claims against in this case, including Defendants MMC, Nichols, Foster, and Kaiser. Plaintiff also attempted to raise these federal claims against numerous John and Jane Doe security guards and nurses, including Dr. Demaro and Nurse Harris. *See Mahone I*, ECF No. 59, (Aug. 24, 2017) (Order & R. & R. denying motion to amend to add parties). In addition, Plaintiff alleged state law claims against Defendants Nichols, Foster, Kaiser, MMC, and numerous Doe Defendants for battery, false imprisonment, and intentional infliction of emotional distress. *See Mahone I*, ECF No. 16, (Feb. 26, 2016) (Suppl. Compl.).

Following initial screening of his claims in *Mahone I*, Plaintiff's individual capacity § 1983 claims against Defendants Nichols, Foster, and Kaiser, and his state law claims against MMC, were permitted to proceed for further factual development. *See Mahone I*,

4

ECF No. 18, (May 20, 2016) (R. & R.). But, Plaintiff's other claims were dismissed, without prejudice, over Plaintiff's objections. *Mahone I*, ECF No. 25, (June 22, 2016), (Order adopting R. & R.). The defendants who remained in *Mahone I* moved for summary judgment on October 7, 2016. Plaintiff responded to that motion by filing his own motion for summary judgment in which he also requested that the Court consolidate this case—which he initiated on May 9, 2017 (ECF No. 1)—with *Mahone I*. *See* Attach. 1 to Pl.'s Mot. Summ. J., ECF No. 53-1 in *Mahone I*. On August 24, 2017, the undersigned recommended that Plaintiff's claims against the only remaining individual Defendants in *Mahone I* be dismissed on grounds that they were not state actors and Plaintiff therefore could not maintain his § 1983 claims against them. The undersigned further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and denied Plaintiff's motions to amend and his motion to consolidate. *See Mahone I*, ECF No. 59, (Aug. 24, 2017) (Order & R. & R.). Judgment was entered dismissing Plaintiff's remaining claims in *Mahone I*, on September 27, 2017. *Mahone I*, ECF No. 64, (Sept. 27, 2017) (J.).

    B. This Action

Plaintiff initiated this suit on May 22, 2017 (ECF No. 1). The Court conducted a preliminary screening and, on December 22, 2017, allowed Plaintiff's EMTALA claims against Defendant MMC to proceed but dismissed all of his § 1983 claims and his state law claims against all non-MMC defendants. Order 23, ECF No. 10. Defendant moved to dismiss Plaintiff's EMTALA claims on March 5, 2018, arguing they are barred by the applicable statute of limitations. Mot. to Dismiss 1, ECF No. 18. Plaintiff was notified of

5

Defendant's motion to dismiss the same day. Notification of Mot. to Dismiss, ECF No. 19. On March 29, 2018, Plaintiff, in two separate submissions, responded to Defendant's motion and also moved to amend his complaint (ECF Nos. 20, 21). Plaintiff subsequently filed a renewed motion for recusal (ECF No. 26), motion for a hearing (ECF No. 30), and a motion asking the Court to compel Defendant to take certain actions (ECF No. 31).

## DISCUSSION

### I. Plaintiff's Recusal Motion

On May 7, 2018, Plaintiff moved for the undersigned to "disqualify himself" based on "impartiality and extrajudicial actions taken without the consent of the parties[.]" 2nd Recusal Mot. 1, ECF No. 26. He cites 28 U.S.C. §§ 144, 455 as the statutory bases for his motion. *Id*. Plaintiff previously moved for the undersigned to recuse himself on November 20, 2017, and that motion was denied on December 22, 2017. 1st Recusal Mot, ECF No. 7; Order 6.

A. Standard

*1. 28 U.S.C. § 455*

28 U.S.C. § 455 provides the standard for when a judge, justice, or magistrate judge must disqualify himself from a particular proceeding. The statute generally provides that a magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute also enumerates certain other circumstances requiring a judge to disqualify himself. *Id.* at § 455(b)(1)-(5).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the

grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted). In the Eleventh Circuit, "it is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (internal quotation marks and citation omitted). As a result, "a judge's rulings in the same or a related case are not a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case.").

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)). Any knowledge gained through the course of a judicial proceeding is not a "disputed evidentiary fact" that requires recusal. *United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999). Instead, knowledge of disputed evidentiary facts must be gained through an extrajudicial source to warrant recusal.

## 2. 28 U.S.C. § 144

28 U.S.C. § 144 also governs recusal, but it requires the moving party to file an affidavit stating that the judge has a personal bias or prejudice against the plaintiff or defendant, and the affidavit must provide facts and reasons for the belief that bias or prejudice exists. The statute's affidavit requirement is strictly enforced. *See, e.g., United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (finding that the court did not abuse its discretion by denying litigant's pro se motion for recusal under 28 U.S.C. § 144 because the affidavit did not meet the statute's procedural requirements). The party seeking recusal under § 144 "must allege facts that would convince a reasonable person that bias actually exists." *Stringer v. Doe*, 503 F. App'x 888, 890 (11th Cir. 2013) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)).

### B. Plaintiff's Motion

Plaintiff's first argues that the undersigned should recuse himself from this case because of events that occurred in *Mahone I*. Specifically, he contends that the undersigned acted with bias and in a "highly prejudicial" manner by "allowing the defendants [in *Mahone I*] not to comply with the requirements of local rule 56 [regarding the proper filing procedures for summary judgment motions.]" 2nd Recusal Mot. 4. Next, he argues that the undersigned "committed extra judicial personal bias in [*Mahone I*] by entering "a dispositive ruling . . . dismissing his [§] civil rights claims." *Id*. at 5.

Neither of Plaintiff's contentions have merit under either relevant statute. "Under either § 144 or § 455 . . . [Plaintiff] must allege facts from which a reasonable person could conclude the [undersigned's] impartiality could be questioned, or that show a particular

8

ground for recusal actually exists." *Stringer*, 503 F. App'x at 890. Plaintiff has done no such thing. Defendants in *Mahone I* were merely notified by the office of the Clerk of Court that their statement of material facts needed to be filed as a separate document from their summary judgment motion, rather than as part of the same electronic document. *Mahone I*, October 11, 2016, Notice of Deficiency. Also, the undersigned did not issue a "dispositive ruling" to dismiss Plaintiff's claims in *Mahone I*. Instead, the undersigned addressed the Mahone I defendants' motion for summary judgment in a Report and Recommendation which was then adopted by the presiding U.S. District Judge. *Mahone I*, ECF No. 63, (September 27, 2017) (Order adopting R. & R.). Plaintiff has neither alleged facts that would lead a reasonable person to conclude the undersigned's impartiality could be questioned, or shown a particular ground for recusal actually exists, so his motion seeking the undersigned's recusal is denied.

## II. Plaintiff's Motion to Amend

On March 5, 2018, the Court notified Plaintiff of Defendant's motion to dismiss and specifically advised him that any amendment to his complaint that he wished to file pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), had to be filed within twenty-one days. Notification of Mot. to Dismiss 4. Because Plaintiff—a *pro se* prisoner litigant—signed his motion seeking leave to amend on March 21, 2018, the proposed amended complaint Plaintiff attached to his motion is accepted as his timely filed amended

9

complaint.[2]  Generally, the amended complaint "incorporate[s] and adopt[s] and reallege[s] any and all claims . . . in [the above captioned case] and [*Mahone I*]."  Proposed Am. Compl. 3, ECF No. 21-1.

**III. Defendant's Motion to Dismiss**

On March 5, 2018, Defendant moved to dismiss this action arguing that "Plaintiff's Emergency Medical Treatment and Active Labor Act (EMTALA) claims are barred by the applicable statute of limitations prescribed by 42 U.S.C. § 1395dd(d)(2)(C)."  Mot. to Dismiss 1.  After Plaintiff filed his motion to amend, Defendant responded by renewing their motion to dismiss and reiterating that "Plaintiff freely admits he failed to refile his claims within the six (6) month period required by [O.C.G.A.] § 9-2-61, and therefore, the same are time-barred and due to be dismissed."  Resp. to Mot. to Amend 2, ECF No. 24. The Court finds that Defendant is correct and Plaintiff's claims are, indeed, time barred.

A.  Applicable Limitation Rules

Claims brought under EMTALA in a civil action "must be brought within two years of the date of the alleged violation."  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1310 (11th Cir. 2006) (citing § 1395dd(d)(2)(C)).  A plaintiff can avoid having their claims time barred by filing a "renewed" suit.  *See Scott v. Muscogee Cty.*, Ga., 949 F.2d 1122, 1123 (11th Cir. 1992).  "Whether a lawsuit can be renewed after it has suffered a non-merits dismissal is governed by state law."  *Journey-Bush v. Cty. of Macon, Georgia*, No.

---

[2]  Under the "mailbox rule," filings made by *pro se* prisoner litigants are considered filed on the date they are delivered to prison authorities for mailing.  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

10

5-06-CV-349-CAR, 2007 WL 1390723, at *2 (M.D. Ga. May 9, 2007). In Georgia, renewal is governed by O.C.G.A. § 9-2-61. *See Wilson v. Hamilton*, 135 F. App'x 213, 214 (11th Cir. 2005). Under that statute, an applicable statute of limitations "is satisfied if a plaintiff files a valid action within the limitations period, that action is later dismissed, and the plaintiff files a new action (that would otherwise be time-barred) within six months of the dismissal. *Scott*, 949 F.2d at 1123. Essentially, a case "that is dismissed either voluntarily or involuntarily can be refiled [within six months] under the safe haven of [O.C.G.A. § 9-2-61], so long as the case has not been adjudicated on the merits." *Goins v. Cty. of Quitman*, No. 7:11-CV-117-HL, 2012 WL 39638, at *2 (M.D. Ga. Jan. 9, 2012) (citing *Kimball v. KGB Transport*, 241 Ga. App. 511, 527 S.E.2d 233, 234 (1999)).

B. Plaintiff's Claims

Plaintiff's claims arise out of an incident that allegedly occurred on November 12, 2013. Compl. 7. The EMTALA claims he raised in the previous case he filed in this Court (*Mahone I*) based on the same alleged incident were dismissed, without prejudice, by this Court's order on June 22, 2016. *Mahone I*, ECF No. 25, (June 22, 2016) (Order adopting R. & R.). He did not initiate this suit until May 9, 2017—nearly two years after the EMTALA claims at issue here were previously dismissed.[3] Compl. 23. Because Plaintiff's claims are time barred under EMTALA's express limitations provision and he failed to

---

[3] Although *Mahone I*, as a case, continued past this date, this Court has previously found that the operative date for application of Georgia's renewal statute is the date on which particular claims were dismissed rather than the date the entire previous case was dismissed. *Goins v. Cty. of Quitman*, No. 7:11-CV-117-HL, 2012 WL 39638, at *2-3 (M.D. Ga. Jan. 9, 2012).

11

renew his claims in the window created by Georgia's renewal statute, his claims are dismissed.[4]

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss (ECF No. 18) and Plaintiff's motion to amend (ECF No. 21) are granted. Plaintiff's renewed motion for recusal (ECF No. 26) is denied and his motions for a hearing (ECF No. 30) and court compelled action (ECF No. 31) are denied as moot.

SO ORDERED, this 20th day of March, 2019.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court has previously noted that "[i]n the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's [remaining] state law claims." Order 23, Dec. 22, 2017, ECF No. 10. Because the Court is dismissing Plaintiff's EMTALA claims, the only claims over which it has original jurisdiction, here, it is also ordered that Plaintiff's remaining state law claims be dismissed. *See, e.g., Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").